Pearson, J.
 

 We concur with his Honor that ths plaintiff commenced his action too soon. Had the matter rested upon inference, we would have been of opinion that the plaintiff, according to the agreement, was to sell for cash, and by way of compensation for his trouble, and in lieu of commissions, was to have all he got over $1500; that is, the defendant was, in the first place, to have $1500 in cash, in consideration for his land, and the plaintiff was then to have any excess he might be able to obtain.
 

 By giving a long credit without interest, the plaintiff could, no doubt, have found a purchaser at $2000, or even a larger sum; and so the defendant, if he was held down to $1500, when the credit was out, would lose interest and the profits of the land, and the consideration received by him be, in fact, less than $1500.
 

 It appears from the evidence, that the plaintiff sold, in part, for cash, and the balance on time, to be secured by the notes of the purchaser, and the title to be retained, In this, the defendant acquiesced. He received a part in cash, took the notes of the purchaser, and executed a bond to make title when the purchase-money was paid. The point is, at what
 
 *366
 
 time, according to the intention of the parties, did the plaintiff’s right to demand the compensation agreed on, accrue
 
 %
 
 It is against reason to suppose that the defendant was bound to pay the plaintiff’s compensation
 
 out of Ms own poclcet,
 
 and wait for the pripe which he was to have for his land, until the sale-notes became due. This, to use a familiar expression, is “putting the cart before the horse.” The primary object was to enable the defendant to effect a sale of his land, and get the money for it. The plaintiff’s compensation was secondary — an incident that was to follow. The plaintiff did not
 
 get
 
 for the defendant $1500, by procuring the notes of the purchaser on time, no matter how solvent he was.- He had no right to demand anything for his services until the defendant received the price, or had a rig-lit to receive it. So, his cause of action will not accrue until the sale notes fall due, and the defendant receives the money, or has a reasonable time to collect it and is guilty of laches.
 

 The expi-ession used by the defendant that “his word was as good as his bond,” amounts to nothing. The meaning is, that his word was as good as his bond, for anything ho was bound to do, but that he did not think he was bound to pay the plaintiff before he got the money himself; and in that, we concur with him.
 

 The case referred to by the defendant’s
 
 counsel
 
 — Bull v.
 
 Price,
 
 7 Bing. Rep. 237, (20 Eng. Com. Law Rep.) is in point.
 
 Bull
 
 undertook to negotiate with the commissioners of woods, for the sale of Price’s interest in certain premises, and was to attend to the business in reference to the valuation, &c., and was to have
 
 two per cent
 
 on all he
 
 obtained
 
 by private treaty, arbitration, or trial by j ury, for his trouble and exertions. The value was ultimately fixed by a jury at £4000, but it turned out that the property was charged with an annuity of £80 a year. In consequence of a difficulty in settling this matter, the payment of the £4000 was postponed, and the commissioners paid the money into bank, where the parties entitled to it could get it by application to the Court of Exchequer. Bull commenced his action before Price had received the
 
 *367
 
 money, and it was decided that he began too soon.. The ■Court say, he was entitled to commissions, not on the sum which may be agreed on, or awarded, or ascertained by a jury, but on.the sum which may be
 
 obtamed
 
 by the defendant, and that Bull must wait until Price “ actually obtained, that is,
 
 reoowed it,”
 
 or, at least, until the amount that he ought to receive, was ascertained.
 

 So, we say, the plaintiff must wait until the price, agreed to be paid, falls due.
 

 PeR Curiam. Judgment affirmed.